AMECO, Augusto Menéndez Construction Corporation, Plaintiff and Appellant, *v.* Jaress Corporation, Defendant and Appellee.

No. R-68-237.        Decided March 17, 1970.

*Baragaño, Trias, Saldaña & Francis, Oronte Oliveras Sifre,* and
*José A. Cestero* for appellant. *Rodolfo R. Aponte* for appellee.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

Plaintiff-appellant, AMECO, Augusto Menéndez Construction Corporation, alleged in an amended complaint filed in the Superior Court, San Juan Part, against defendant-appellee Jaress Corporation, that on June 22, 1964, it leased to the latter for a term of 4 months and for a rental of $4,400, a certain construction equipment composed of a tower and other appurtenances which it described in the complaint; that on December 19, 1964, defendant returned the equipment leased in a useless condition; that an insurance company had paid for the cost of repairing and restoring said equipment to its operative condition; that by reason that defendant had delivered the equipment leased in useless condition, plaintiff could not use the same or lease it as of the date when it was returned and during a period which was later stipulated as 4 months and 10 days; and that as a consequence thereof it had a loss of $1,100 monthly until said equipment could be used again.

The trial court dismissed the complaint. Its second, third, fourth, and fifth findings of fact are as follows:

"2.—By virtue of Section 9 of the Lease Contract the lessee assumed the obligation to compensate the lessor for the loss of or damage to the property leased.

"3.—According to the agreement the tower was installed on the grounds of the Flamboyán Hotel, then under construction. A series of bridges protruded from the tower which provided access to the different floors of the building under construction. These bridges or platforms were solidly constructed and according to

the highest standards in the construction industry. The platforms were inspected by the State Insurance Fund and by the Department of Labor. They were also periodically inspected by defendant's agents and representatives. On the date of the accident which caused the damages to the leased tower, the latter, as well as the platforms, were in the possession of defendant's subcontractor called Demora. In the morning of the accident the subcontractor notified the defendant's representative that one of the poles of platform No. 3 was out of place. Immediately, defendant's representative, Engineer Benjamín Miller, a person of vast experience in the construction field, went to the place and upon noticing the defect gave orders in the sense that all the personnel should move away from the tower. A few seconds afterwards there was a downfall and 10 to 12 platforms fell down. The day before the accident the tower had been inspected, and the pole which on the day of the accident they noticed was out of place, was in a correct position. It is probable that this pole was displaced upon receiving a strong blow. It is unknown when and how it received the blow.

"4.—As a result of the fall of the platforms the tower suffered damages, but the cost of the repairs was paid by an insurance company.

"5.—The tower was returned on December 19, 1964, and it could not be repaired until the last days of the month of April, since they had to order the necessary parts and accessories from the United States for repairing it. During the time the tower was being repaired defendant was precluded from using it in some construction projects it was developing or from leasing it to a third person."

As a matter of law the trial court determined that the damage sustained by the equipment was not the lessee's fault, and it stated that the possible cause of the accident was "a strong blow upon one of the supports of the tower, which blow was received under unknown circumstances," for which reason it concluded that the damages sustained by the equipment were not the lessee's fault.

According to the third clause of the lease contract involved in this transaction, the lessee bound itself to pay a rental of $1,100 for each *additional month* that the latter

retained the equipment after the expiration of the 4-month period agreed upon. According to the seventh clause the lessee was bound to see that the equipment leased would not be subject to careless or needlessly rough usage, would maintain it in good condition, and would return it in such good condition. Furthermore, it would utilize competent or well-trained personnel for the operation of the equipment. Under the ninth clause the lessee bound itself to indemnify plaintiff against all damages sustained by the equipment during the rental period, and any such physical damage would be computed on the basis of a capital value of $15,000.

The following sections of the Civil Code[1] are presumptions of law applicable to this issue:

Section 1445, second paragraph, which binds the lessee to use the thing leased as a diligent father of a family would, applying the same to the use agreed upon; § 1446 to the effect that if either the lessor or the lessee should not comply with the obligations respectively imposed on them by §§ 1444 and 1445, they may request the rescission of the contract *or indemnity for damages;* § 1453 which provides that the lessee is liable for the deterioration or loss suffered by the thing leased, *unless he proves that it took place without his fault;* and § 1458 in the sense that if the thing leased is lost *or any of the contracting parties does not comply with what has been stipulated,* the provisions of §§ 1136 and 1137, and of §§ 1054 and 1077 shall be respectively observed.

To that effect, § 1137 provides that whenever the thing should be lost, when in the possession of the debtor, *it shall be presumed that the loss occurred by his fault and not by a fortuitous event,* unless there is proof to the contrary; and § 1054 provides that those who in fulfilling their obligations are guilty of fraud, negligence, or delay, and those *who in any manner whatsoever act in contravention of the stipula-*

---

[1] The number of the sections correspond to the 1930 edition.

*tions of the same*, shall be subject to indemnity for the losses and damages caused thereby.

Section 1058, which provides that no one shall be liable for events which could not be foreseen, or which having been foreseen were inevitable, with the exception of the cases expressly mentioned in the law or those in which the obligation so declares; and more particularly § 1059, which provides that the indemnity for losses and damages includes not only the amount of the loss which may have been suffered, *but also that of the profit which the creditor may have failed to realize*, are presumptions of law applicable to the issue herein.

According to the findings of fact of the trial court, the equipment was damaged as a result of the collapse of some platforms while the latter and the equipment were in possession and were used by a subcontractor.[2]

■ In *Cabinero* v. *Cobián Theatres*, 81 P.R.R. 926 (1960), we discussed rather amply the responsibility of a lessee concerning the return of the thing leased. According to what we said in said case, in the light of the cases cited therein, and pursuant to the aforementioned sections of the Code, lessee herein would be relieved from liability, or as it has been said, there would be no fault on its part in failing to return the equipment as agreed upon, only in case of a fortuitous event, that which cannot be foreseen, or which, having been foreseen, is inevitable. Section 1058.

Considering that in the case of a lessee the *fortuitous event* is not assumed by express provision of § 1137 concomitant with § 1458, and that on the contrary, *the fault* is assumed, the findings of fact of the trial court do not support

---

[2] The contract expressly prohibited the sublease of the equipment. The trial court concluded that there was no violation of the contract in that sense, in view of the manner in which constructions are performed today. The latter, however, would not affect the lessee's contractual and legal obligation to return the equipment in the good condition in which it had received the same.

at law the inexistence of fault on the part of lessee by reason of the fortuitous event. The fact that there was the necessary inspection is not the only determining factor of the inexistence of said fault. The fact that a blow on the poles of the tower, in the normal course of the operation or function without there having occurred any unusual event of force majeure, had displaced one of the posts of the platforms, causing the collapse thereof, could disprove the firmness or correctness of the installation of said platforms or lead to the conclusion that there was careless operation.[3]

■ In the light of the rule of law governing fortuitous events, the inevitable accident although foreseeable in some cases, we cannot agree that the facts, as they were determined by the trial court, constitute a situation of a fortuitous event

---

[3] Defendant's Exhibit C, which appears in the record, is an illustrated page of the San Juan Star corresponding to the edition of Thursday, November 19, 1964. It contains four photographs, two in the upper part and two in the lower part, and between them, all across the page, in large type, the word "COLLAPSE." The larger of the photographs represents a twelve-story building under construction and the platforms before the collapse, installed from the ground to the last floor. At the bottom of the photograph it is stated in the English language in which this newspaper is published:

"WHAT FELL—Arrow at the top of the picture, right, points to the long vertical line of scaffolding that fell yesterday. This picture was taken last week. (STAR photo)"

The second photograph shows the lower part of the building under construction, many men working, and it has this caption:

"DIGGING OUT—Workmen clear away fallen scaffolding at Flamboyan Hotel construction site. Eleven tiers of scaffolding fell. (STAR photo by Marvin W. Schwarts)"

A third photograph shows men working, and underneath it, this caption:

"SEARCHING—Laborers pry into rubble in quest of fellow workers buried by the crash. (STAR photo by Marvin W. Schwarts)"

The last photograph shows a man and a woman embracing each other and it says:

"HAPPY REUNION—In the midst of yesterday's tragedy at the construction site, this woman had a happy reunion with her husband, one of the workers. She had rushed to the site after hearing about the accident and found her husband safe. They are unidentified. (STAR photo by José García)"

exculpating the lessee. See: *Ruiz v. Umpierre*, 49 P.R.R. 262 (1935), and cases cited; *Cabinero v. Cobián Theatres, supra*.

■ After arriving at the preceding conclusion, let us see what lessee is liable for. It is liable not only for the consequential damage, which is not in issue herein, since it was paid for, but also for the loss of profit. Section 1059 of the Civil Code.

In *León Parra v. Gerardino*, 58 P.R.R. 494 (1941), a case involving a lease in which the lessee returned the thing in a condition of deterioration, we sustained a claim for uncollected rentals (loss of profit) during a reasonable period of time to obtain and perform the necessary repairs. And see: *Muñiz v. Aetna Casualty & Surety Co.*, 38 P.R.R. 752, 761 (1928): "the best measure of damage is the cost of its restoration and the value of the use of the property while the repairs are being made." *Fernández v. Ortiz*, 33 P.R.R. 6 (1924); *Hoffman v. Cuadrado*, 14 P.R.R. 573 (1908); *Pérez v. Sampedro*, 86 P.R.R. 498, 502–3 (1962).

Appellee requests us to uphold the conclusion of the trial court to the effect that granting damages for loss of profit in this case would be tantamount to extending the scope of the contract between the parties.

■ No, because although obligations may be created by contract, they are also created by law, pursuant to § 1042. In order that § 1059 should not apply to this case, it would have been necessary that by express agreement, the lessee should have been free from this binding liability imposed by law. Nothing was agreed upon to the contrary. Furthermore, § 1210 of the Civil Code extends the obligatoriness of the contract to cover not only what has been expressly stipulated, but also with regard to all "the consequences" which, according to their nature, are in accordance with good faith, use, and the law.

The record shows that appellant accepted the delivery of the damaged equipment to permit the use of the hotel,

without waiving its contractual rights. It had been agreed upon originally that the lessee would pay at the rate of $1,100 per month during all the time it retained the equipment after the termination of the contract. On rendering the judgment which the trial court should have rendered, and in the absence of any other evidence, according to our former decisions, the amount of the loss of profit may be reasonably fixed in $1,100 monthly, as claimed in the complaint, making a total of $4,766.66 for the 4 months and 10 days the equipment was being repaired.

The judgment appealed from dismissing the complaint will be reversed, and another rendered sustaining it and granting a compensation of $4,766.66 in favor of plaintiff, with costs, and $800 for attorney's fees in the trial court.

Mr. Chief Justice Negrón Fernández did not participate herein.